JEANNETTE LISKIEWICZ, ADMINISTRATRIX
(ESTATE OF EDWARD G. LISKIEWICZ) *v.*
KENNETH E. LEBLANC ET AL.
(3311)

DUPONT, C. J., HULL and SPALLONE, Js.

Argued June 5—decision released September 3, 1985

*Martin M. Rutchik* and *Shelley M. Weiss,* for the appellant (plaintiff).

*Joseph G. Lynch,* with whom, on the brief, was *John W. Lemega,* for the appellee (named defendant).

HULL, J. This is an appeal from the trial court's denial of a motion to set aside a jury verdict for the named defendant[1] in an action alleging the wrongful death of the plaintiff's decedent. The plaintiff claims that the trial court erred (1) in excluding testimony and demonstrative evidence presented by an expert witness on the basis of the court's assessment of the credibility of the witness, (2) in refusing to admit an expert opinion on the basis of deductive reasoning, and (3) in allowing excessive voir dire of the plaintiff's expert by defense counsel, by itself engaging in excessive examination of the witnesses and, by failing to maintain judicial impartiality. We find no error.

The jury could reasonably have found the following facts: On June 9, 1979, at approximately 11 p.m., the plaintiff's decedent was operating his automobile in a westerly direction on route 165 in Preston. The defendant, Kenneth E. LeBlanc, an acquaintance of the dece-

---

[1] Although the named defendant's father, Ronald E. LeBlanc, was also named in the complaint as a defendant, the action was withdrawn as to him on February 28, 1984. Hence, the named defendant is the only appellee herein.

dent, was operating an automobile owned by his father, Ronald E. LeBlanc, directly in front of the decedent's automobile. Both drivers were alone.

A collision occurred between the two vehicles in which the rear end of the defendant's automobile was struck by the front end of the decedent's automobile. The decedent thereafter lost control of his automobile which crashed through a guardrail and came to rest in a wooded area adjacent to the road. The decedent sustained fatal injuries.

At trial, the plaintiff introduced Eugene Baron, an expert in accident reconstruction, to testify about his reconstruction of the accident in question. On the basis of his sixteen years as a state police officer, his affiliation with the forensic laboratory accident reconstruction unit of the state department of public safety for seven years and numerous other credentials, the court qualified Baron as an expert. The plaintiff's counsel then proceeded to examine him regarding the accident.

Baron testified, with the aid of a diagram of route 165 which he had prepared and which was admitted into evidence as a full exhibit, that the skid marks caused by the decedent's loss of control were roughly 90 feet in length, terminating when the car left the road. Working backward, using commonly accepted reaction time estimations, as well as the defendant's testimony regarding the speeds of the vehicles, Baron testified that the impact of the two cars had occurred approximately one hundred feet prior to the start of the skid while the cars were travelling at roughly equal speeds in the left hand, or passing lane of the highway.

In order to explain his testimony further, Baron relied upon a clear plastic overlay which showed the two cars at various points during Baron's theoretical reconstruction of the accident. The diagram itself showed only

the skid marks while the overlay placed the vehicles in a manner which comported with the skid marks.

As part of her case, the plaintiff attempted to show that the accident occurred when the defendant's car swerved suddenly into the passing lane while the decedent was passing him. Baron's overlay showed precisely that scenario just prior to the impact point. Nonetheless, the court concluded, after a lengthy voir dire, that there was no theoretical or evidential basis for the pre-impact portion of the overlay and excluded that portion of the overlay from the evidence. Thereafter, the jury rendered a verdict for the defendant and, upon the court's denial of her motion to set aside the verdict, the plaintiff filed the present appeal.

The first two claims of error raised herein deal with the court's exclusion of Baron's testimony and the map overlay regarding the pre-impact paths of the two vehicles. The plaintiff argues, essentially, that the court's rulings[2] were based on its lack of understanding of Baron's method for arriving at his conclusions regarding the pre-impact paths of the two vehicles and that these rulings invaded the province of the jury to evaluate the credibility of the witness.

"[T]he trial court has wide discretion in ruling on the admissibility of expert testimony . . . ." *Going* v. *Pagani,* 172 Conn. 29, 35, 372 A.2d 516 (1976). This

---

[2] We note, at the outset, that the plaintiff's brief does not fully comply with Practice Book § 3060F (d) (3). No statement has been provided which sets out the evidentiary rulings at issue here. In her reply brief, the plaintiff argues that compliance with the rule is impossible in this case since a series of rulings and arguments are at issue here. We note that this argument, valid insofar as it goes, only serves further to confuse the issues of this case. The fundamental objection which the plaintiff has to the court's rulings is to the exclusion of Baron's testimony and to that portion of the overlay dealing with the pre-impact paths of the vehicles. Because the application of the rule to this case is so complex, we nonetheless choose to consider her claims of error on their merits.

discretion is "not to be disturbed . . . 'unless [it] has been abused, or the error is clear and involves a misconception of the law.' " *Siladi* v. *McNamara*, 164 Conn. 510, 513, 325 A.2d 277 (1973); see also *McKiernan* v. *Caldor, Inc.,* 183 Conn. 164, 168, 438 A.2d 865 (1981).

In the present case, a close reading of the transcript shows that although there was evidence or a theoretical basis justifying Baron's testimony regarding the location of the vehicles at the point of impact and their subsequent paths, Baron had little theoretical or evidential support for his testimony regarding their locations before that point. It appears that he could testify as to the minimum distance between the point of impact and the point at which the defendant could possibly have moved into the passing lane on the basis of the ability of the defendant's car to make the lane-change before impact without a loss of control, or without having skidded itself.[3] Baron conceded, however, that maximum distance between the point of impact and the defendant's lane change could not be computed.[4] Hence, Baron conceded that it was possible that the defendant was in the passing lane a half-mile prior to the accident. Thus, contrary to the plaintiff's argument

---

[3] Baron testified that "at fifty-five miles an hour a vehicle is only capable of turning a radius of a calculated full diameter. Anything greater or shallower, in terms of the radius, will produce side slipping."

[4] The transcript indicates that the following colloquy between the court and the witness took place: "The Court: Let me ask you a question: Do you know at what time when— —how far back the decedent's vehicle and the Defendant's vehicle were both in the west— —in the eastbound lane, how far back from the point of impact when they first got in the eastbound lane? Can you tell that?

"The Witness: No, I can't.

"The Court: In other words, they could, if— —assuming that the Defendant cut in front of the decedent, could you tell me where it could have happened? Could it have happened further east than you had it?

"The Witness: Yes, it could have, sir.

"The Court: Could have happened half a mile further east?

"The Witness: Absolutely."

in her brief, the court was not concerned with the credibility of the witness, but with the factual basis for his opinion. "The facts upon which an expert's opinion is based are an important consideration in determining the admissibility of his opinion." *Going* v. *Pagani,* supra, 34. "The question of whether a sufficient foundation was laid is a factual question for the court." *Spoto* v. *Hayward Mfg. Co.,* 2 Conn. App. 663, 670, 482 A.2d 91 (1984). In the present case, as in *Going,* we hold that "the uncertainties in the essential facts on which the witness' opinion [and his diagram were] predicated were such as to make an opinion based on them without substantial value." *Going* v. *Pagani,* supra, 35. Thus, it was not error for the court to exclude the pre-impact portion of the overlay or Baron's testimony relative thereto.

With regard to the plaintiff's remaining claim of error, we note that "[w]hether a trial court elects to question a witness is within its sound discretion, as is the extent of the examination. Its exercise will not be reviewed unless it abused its discretion." *Hutchinson* v. *Plante,* 175 Conn. 1, 3, 392 A.2d 488 (1978). A review of the transcript in this case indicates that the court's examination of Baron, as well as the extensive voir dire by the defense counsel, was necessitated by the plaintiff's confusing presentation of Baron as a witness. The record demonstrates the court's admirable efforts at drawing out the basis for Baron's testimony and in giving the plaintiff every opportunity to prove her case.

There is no error.

In this opinion the other judges concurred.